[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiff, Mafcote Industries, Inc., has brought this action against the defendant, Randall Swanson, seeking damages for the alleged theft of a car, office equipment and confidential sales information.
The defendant has filed a counterclaim sounding in intentional infliction of emotional distress (count one), negligent infliction of emotional distress (count two), and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (count three).
The plaintiff has moved to strike the first and third counts of the counterclaim. The plaintiff's motion to strike the first count is on the ground that "[the plaintiffs'] alleged actions in negotiating the terms of Swanson's termination do not constitute `extreme and outrageous conduct' necessary to prove a claim for intentional infliction of emotional distress . . . . as a matter of law." The plaintiff moves to strike the third count on the ground that "[CUTPA] does not apply to the employment relationship. "
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." Fairfield Lease Corp. v. Romano's Auto Service,4 Conn. App. 495, 496, 495 A.2d 286 (1985). The role of the trial court is "to examine the [pleading] construed in favor of the [non-movant], to determine whether the [non-movant] has stated a legally sufficient cause of action." Napoletano v. CignaHealthcare of Connecticut, Inc., 238 Conn. 216, 232-33,680 A.2d 127 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1106,137 L.Ed.2d 308 (1997).
The first count of the defendant's counterclaim sounds in intentional infliction of emotional distress. The plaintiff CT Page 11223 argues, in support of its motion to strike, that the defendant fails to allege conduct which rises to the level of "extreme and outrageous".
In order to establish a counterclaim for intentional infliction of emotional distress, the defendant must allege, in the counterclaim, the following elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the [plaintiff's] conduct was the cause of the [defendant's] distress; and (4) that the emotional distress sustained by the [defendant] was severe . . . ." Drew v. K-Mart Corp.,37 Conn. App. 239, 251, 655 A.2d 806 (1995).
The plaintiff does not dispute that all of the requisite elements have been pleaded. The only issue that the plaintiff raises regarding the defendant's allegations is whether the conduct alleged rises to the level of "extreme and outrageous" as a matter of law.
"The issue of whether a defendant's conduct rises to the level of extreme and outrageous behavior is a question of law to be determined by the court . . . . For conduct to be considered extreme and outrageous, it must exceed all bounds usually tolerated by a decent society, and be of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Pantaleo v. Ravski, Superior Court, judicial district of New Haven at New Haven, Docket No. 326931 (Feb. 14, 1997, Silbert, J.).
In the present case, the defendant, in his counterclaim, alleges the following conduct: "a. [the plaintiff] put several different, inconsistent choices before [the defendant]; b. [the plaintiff] changed its stated posture as negotiations continued; c. [the plaintiff] reneged on particular items previously agreed to by the parties during the course of the negotiation; d. [the plaintiff] said that it would entertain and consider certain of [the defendant's] proposals and then, without prior notice, acted to reject the proposal and intentionally cause upset to [the defendant]; and e. [a]s negotiations progressed [the plaintiff] changed its posture, in some instances putting regressive proposals forward."
The conduct alleged by the defendant does not "exceed all CT Page 11224 bounds usually tolerated by a decent society." Nor is the conduct alleged "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." The facts, as pleaded, are legally insufficient to sustain a cause of action for intentional infliction of emotional distress and therefore, the plaintiff's motion to strike the first count of the counterclaim is granted.
The defendant, in the third count of the counterclaim, alleges that "[the plaintiff's] actions in response to [the defendant] were unfair and coercive . . . [and] constitute unfair trade practices within the meaning of [General Statutes] §§ 42-110 et seq."
The plaintiff moves to strike the third count on the ground that "[CUTPA] does not apply to the employment relationship. " The issue raised by the plaintiff regarding this count tests the legal sufficiency of the counterclaim and is therefore an appropriate issue to address on a motion to strike.
In Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670,613 A.2d 838 (1992), the court upheld the trial court's granting of a motion to strike a CUTPA claim arising from the employer-employee relationship because "[t]here [was] no allegation in the complaint that the [employer] advertised, sold, leased or distributed any services or property to the [employee]." Quimbyv. Kimberly Clark Corp., supra, 28 Conn. App. 670. The court further stated that "[t]he United States District Court . . . [has] held that the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA . . . ." (Citations omitted; internal quotation marks omitted.) Id.
In the present case, the defendant does not allege that the plaintiff "advertised, sold, leased or distributed any services or property" to him. In fact, the only relationship alleged by the defendant is found in paragraph one of the counterclaim which states only that "[the defendant] was employed by [the plaintiff]." The defendant has not alleged facts that are legally sufficient to maintain a cause of action under CUTPA.
The defendant argues in his memorandum in opposition to the motion to strike that "[i]t is clear from the pleadings that all of the actions complained of in the [c]ounterclaims arise after [the defendant] had been severed from employment." The defendant CT Page 11225 fails to cite, and the court is unable to find, however, any authority to support the proposition that CUTPA applies to employer-employee relationships where the conduct complained of occurs following the employee's termination of employment.
The plaintiff's motion to strike count three of the counterclaim is also granted.
D'ANDREA, J.