[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiff, Theresa D. Maxwell, has filed a fifteen count complaint against the defendants, Rudy's Limousine Service, Inc. ("Rudy's") and Roy Spezzano. The defendant Spezzano is the president and CEO of Rudy's. The plaintiff alleges that she was subjected to gross verbal abuse and gender discrimination while employed by the defendants. The plaintiff also alleges that the defendants improperly have withheld wages owed to her. The defendants have filed a motion to strike counts one through nine, eleven, and thirteen through fifteen based on various grounds.
"The proper method to challenge the legal sufficiency of a complaint is to make a motion to strike prior to trial." Gulackv. Gulack, 30 Conn. App. 305, 309, 620 A.2d 181 (1993). The role of the trial court is "to examine the [complaint] construed in favor of the [plaintiff], to determine whether the [plaintiff] has stated a legally sufficient cause of action." Napoletano v.Cigna Healthcare of Connecticut. Inc., 238 Conn. 216, 232-33,680 A.2d 127 (1996), cert. denied, 117 S.Ct. 1106,137 L.Ed.2d 308 (1997).
COUNTS ONE THROUGH FIVE
Counts one through five sound in violations of General Statutes §§ 31-68, 31-72, 31-76, 29 U.S.C. § 201, et seq., and 29 U.S.C. § 206(d). The defendants move to strike these counts on the ground that "they are barred, in part, by the applicable statute of limitations."
Generally, "[a] claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike." Forbes v. Ballaro,31 Conn. App. 235, 239, 624 A.2d 389 (1993). See also Practice Book CT Page 6534 § 164. "In two limited situations, however, [the court] will allow the use of a motion to strike to raise the defense of the statute of limitations. The first is when [t]he parties agree that the complaint sets forth all the facts pertinent to the question whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to strike] instead of by answer. . . . The second is where a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right it is a limitation of the liability itself as created, and not of the remedy alone." (Citations omitted; internal quotation marks omitted.) Id., 239-40.
The second exception listed above might apply to the present case. The defendants, however, move to strike each count only "to the extent it alleges" certain events prior to the commencement of the applicable limitations period. It is well established that a motion to strike tests the legal sufficiency of the complaint.Napoletano v. Cigna Healthcare of Connecticut. Inc., supra,238 Conn. 232-33. The defendants ask the court, by way of their motion to strike, to limit the plaintiff's remedy. This is an improper use of the motion to strike. Each of the five counts are legally sufficient. Therefore, the defendants' motion to strike counts one through five is denied.
COUNT SIX
Count six of the complaint sounds in a violation of General Statutes § 31-76. The defendants move to strike count six on the ground that the plaintiff "does not allege any conduct protected from retaliation."
General Statutes § 31-76 states that "any employer who discriminates in any manner against any employee because such employee has filed a complaint or taken any other action as herein provided shall, upon conviction, be fined for each violation not more than one hundred dollars."
As an initial matter, the court questions whether General Statutes § 31-76, without common law support, provides to an employee a private right of action against an employer for "retaliation." The relevant portion of General Statutes §31-76 provides only for criminal type sanctions. Nevertheless, "[a] trial court in passing upon a motion to strike should not CT Page 6535 consider grounds other than those specified." Meredith v. PoliceCommissioner, 182 Conn. 138, 141, 438 A.2d 27 (1980).
The defendants' sole argument in support of striking count six is that the plaintiff fails to allege that she took any action which the statute protects from employer retaliation. The plaintiff alleges that the defendants retaliated against her because of a letter they received from the plaintiff's lawyer. The letter allegedly advises the defendants of the plaintiff's potential claims.
No Connecticut appellate court has ever addressed the type of conduct required by an employee in order for the anti-retaliation provision of General Statutes § 31-76 to apply. However, this court finds that it is a simple issue of statutory construction. Where a statute "is plain and unambiguous on its face . . . [the court] need look no further than the words themselves because [the court may] assume that the language expresses the legislature's intent." Connecticut Light Power Company v.Texas-Ohio Power, 243 Conn. 635, 656 (1998).
The relevant portion of General Statutes § 31-76, on its face, applies only to situations when an employer retaliates for an employee's filing of a complaint or takes "any other action" as provided in the statute. General Statutes § 31-76 says nothing regarding letters sent for the purpose of advising the employer of an employee's potential claims. Count six of the plaintiff's complaint, therefore, is legally insufficient.
The court finds support for its conclusion in Lambert v.Genesee Hosp., 10 F.3d 46 (2nd Cir. 1993). The Lambert court examined the anti-retaliation provision of the federal Fair Labor Standards Act (FLSA). That provision reads similar to the Connecticut version: "The FLSA's anti-retaliation provision makes it unlawful `to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter. . . .'" Id., 55, citing 29 U.S.C. § 215
(a)(3).
The Lambert court, after noting the split of authority in the federal courts regarding this issue, held that "[t]he plain language of this provision limits the cause of action to retaliation for filing formal complaints . . . but does not encompass complaints made to a supervisor." Lambert v. GeneseeCT Page 6536Hosp., supra, 10 F.3d 55.[1] Here, the letter sent to the defendant amounts to little more than a complaint made to a supervisor. The subject letter does not equate to filing a formal complaint. The motion to strike count six, therefore, is granted.
COUNT SEVEN
The plaintiff, in the seventh count of her complaint, incorporates the same facts found in count six and alleges that these facts amount to a violation of 29 U.S.C. § 215 (a)(3). The defendants move to strike this count on the ground that the complaint lacks an allegation of "conduct protected from retaliation." Based on the second circuit's decision in Lambert,
and the discussion above, the motion to strike count seven is granted.
COUNT EIGHT
Count eight sounds in breach of an oral employment contract. The defendant moves to strike count eight on the ground that "it fails to state a claim upon which relief can be granted as the purported contracts lack definiteness and/or consideration."
The defendants initially claim that the plaintiff alleges the existence of multiple employment contracts. The defendants argue that these contracts are not sufficiently definite to be called contracts. However, the plaintiff states, in the relevant allegation in the complaint, that the "[d]efendant breached its employment agreement with [the] plaintiff by failing [to] give her . . . periodic raises . . ., failing to conduct any performance reviews with [the] plaintiff, and failing to live up to the promise of a harassment-free and professional atmosphere. "The reference to "the employment agreement" is singular. It is therefore clear to the court that the plaintiff is alleging multiple breaches of a single agreement.
"[A]ll employer-employee relationships not governed by express contracts involve some type of implied `contract' of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working. . . . To determine the contents of any particular implied contract of employment, the factual circumstances of the parties' relationship must be examined in light of legal rules governing unilateral contracts. . . . [I]n order to find that an implied contract of employment incorporates specific representations CT Page 6537 orally made by the employer . . . the trier of fact is required to find the following subordinate facts. Initially, the trier of fact is required to find that the employer's oral representations . . . was an `offer' — i.e., that it was a promise to the employee that, if the employee worked for the company, his or her employment would thereafter be governed by those oral or written statements, or both. If the oral representations . . . constitute an `offer,' the trier of fact then is required to find that the employee accepted that offer." (Citation omitted; internal quotation marks omitted.) Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., 234 Conn. 1, 13-14, 662 A.2d 89
(1995).
In the present case, the plaintiff has alleged all of the elements required for a cause of action sounding in breach of contract. Whether the alleged contract "[lacks] definiteness and/or consideration" is an issue for a fact-finder to determine and not this court on a motion to strike. The eighth count of the complaint is legally sufficient. Therefore, the motion to strike count eight is denied.
COUNT NINE
Count nine sounds in breach of the duty of good faith and fair dealing. The defendants move to strike count nine on the ground that "it fails to state a claim upon which relief can be granted as [the] [p]laintiff has not alleged a contract or public policy violation." As discussed above, the plaintiff has alleged the existence of a contract. Therefore, the only issue is whether the plaintiff is required to allege a public policy violation. And, if so, whether she has made such an allegation.
"[I]n every contract of employment is a covenant of good faith and fair dealing in the contractual relationship." Dohertyv. Sullivan, 29 Conn. App. 736, 742, 618 A.2d 56 (1992). "In the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing." Id., 743.
In the present case, the plaintiff fails to allege the requisite violation of a public policy. Count nine is legally insufficient. The motion to strike count nine, therefore, is granted.
COUNT ELEVEN CT Page 6538
The eleventh count of the plaintiff's complaint sounds in negligent misrepresentation. The defendant moves to strike count eleven on the ground that the "[p]laintiff has not alleged that [the subject misrepresentations] were made by individuals within the capacity of their employment." This statement is simply incorrect. The plaintiff alleges that the negligent misrepresentations "were made in the course of business. . . ." The motion to strike count eleven, therefore, is denied.[2]
COUNTS THIRTEEN AND FOURTEEN
Count thirteen sounds in intentional infliction of emotional distress against the defendant Rudy's. The plaintiff realleges all of the paragraphs found in the previously discussed counts and adds the boilerplate elements of intentional infliction of emotional distress. The defendants move to strike this count based on two grounds: 1) that the "[p]laintiff has not alleged that the purported actions by individuals were made within the scope or capacity of their employment and in furtherance of Rudy's business; and 2) [the] [p]laintiff has not alleged extreme and outrageous conduct." The defendants also state in their motion that "[t]his [c]ount should also be stricken to the extent that [the] [p]laintiff alleges physical harm."
The court rejects the defendants' first ground based on the reasons stated in footnote 2, supra. The court also rejects the defendants' request to strike count thirteen "to the extent that [the] [p]laintiff alleges physical harm" because such a request goes beyond the scope of a motion to strike. See Napoletano v.Cigna Healthcare of Connecticut, Inc., supra, 238 Conn. 232-33. Therefore, the court need only determine whether the plaintiff has alleged that the defendants' conduct was "extreme and outrageous."
Similarly, the defendant also moves to strike the plaintiff's fourteenth count based on the lack of an allegation amounting to extreme and outrageous conduct. Count fourteen sounds in intentional infliction of emotional distress against the defendant Spezzano. The plaintiff's factual allegations regarding the defendants' conduct are identical for both counts. Therefore, the court will address both counts simultaneously.
"In order for the plaintiff to prevail in a claim for intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to CT Page 6539 inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort. . . ." (Internal quotation marks omitted.) Drew v.K-mart Corp., 37 Conn. App. 239, 251, 655 A.2d 806 (1995).
In the present case, the plaintiff alleges that the defendant Spezzano, during the course of business, would refer to her, and other female employees, "as `monkeys,' `bitches,' and `c*nts.'" The plaintiff also alleges that the defendant Spezzano told her "that she should `learn to think like a man' and that `women are only good for what's between their legs.'" The plaintiff alleges that on one occasion the defendant "summoned plaintiff into his office, slammed the door behind him breaking the glass, ordered [the] plaintiff to sit in a chair and not move, while he hovered over, threatened physical violence and repeatedly yelled obscenities and profanities at her, including calling plaintiff a `f**ing liar' and `f**ing stupid'."
The court is satisfied that the plaintiff's allegations could be found by a fact finder to be "conduct exceeding all bounds usually tolerated by decent society[.]" The type of verbal abuse alleged by the plaintiff, if true, clearly could be labeled "extreme and outrageous," and found to be an intentional act designed to distress the plaintiff. Especially when viewed in the employment context, the plaintiff's allegations form a legally sufficient basis for a claim sounding in intentional infliction of emotional distress. The defendants' motion to strike counts thirteen and fourteen is denied.
COUNT FIFTEEN
Count fifteen sounds in negligent infliction of emotional distress against the defendant Rudy's Limousine. The defendants' move to strike count fifteen on the ground that the plaintiff "has not [pleaded] that the actions and statements of the individuals were made within the scope of their employment and in furtherance of Rudy's business." The defendants also claim that CT Page 6540 count fifteen "should be stricken to the extent that [the] [p]laintiff alleges physical harm."
The court has already rejected both of these grounds. See discussion, supra. Count fifteen is legally sufficient to establish a cause of action sounding in negligent infliction of emotional distress. The motion to strike count fifteen, therefore, is denied.
In sum, the motion to strike counts six, seven and nine is granted. The motion to strike counts one through five, eight, eleven, and thirteen through fifteen, is denied.
D'ANDREA, J.