[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS #103
The plaintiffs, Charles W. Barber, Gerry M. Dumigan, Ronald Emery, John E. Gates, Gerald S. Miner, William C. Waterhouse and Ronald J. Zaremba, bring this action for damages against the defendant, town of Stonington (town). In the complaint, the plaintiffs allege that they were employed by the town through its water pollution control authority. On November 14, 1999, the plaintiffs were laid off because the town delegated its water pollution control operations to U.S. Water, LLC.
The plaintiffs further allege that they were members of Local 1303-232, Counsel #4 of the AFSCME, AFL-CIO, and accordingly, were subject to a collective bargaining agreement dated February 24, 1998. The agreement stipulated that, upon termination, the plaintiffs were entitled to receive payment for unused paid leave time. This included sick and personal time accrued pursuant to the agreement. The plaintiffs had accumulated a substantial amount of paid leave time prior to the date of their termination. Each plaintiff was compensated, however, for only a portion of the amount allegedly owed.
The town negotiated a settlement with all of the plaintiffs on August 23, 2000.[1] The plaintiffs subsequently mailed a letter to the town, dated April 5, 2001, notifying it of their potential claims under General CT Page 6191 Statutes § 31-71 et seq. Although the town did acknowledge receipt of the letter, it did nothing with respect to the plaintiffs' alleged wage claims. The plaintiffs also aver that no further action was taken by the town to resolve its alleged liability after a second letter was sent dated May 8, 2001.
On May 31, 2001, the plaintiffs commenced the present action by service of process on the town by delivering the appropriate documentation to the town clerk, Cynthia Ladwig. On August 17, 2001, the town filed a motion to dismiss. The motion was accompanied by a supporting memorandum of law and documentation, along with a supporting affidavit of George Sylvestre, director of administrative services for the town, pursuant to Practice Book § 10-31(a). The town moves to dismiss the present action on the ground that the plaintiffs did not exhaust their administrative remedies thereby depriving this court of subject matter jurisdiction. On September 21, 2001, the plaintiffs submitted their memorandum in opposition, along with documentation and supporting affidavits pursuant to Practice Book § 10-31(b). The town subsequently filed a reply brief, accompanied by additional documentation and supporting affidavits on October 3, 2001.
Practice Book § 10-31 provides in pertinent part that "[t]he motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject" (Internal quotation marks omitted.) Shay v. Rossi, 253 Conn. 134,140 n. 8, 749 A.2d 1147 (2000). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Internal quotation marks omitted.) Ferreira v.Pringle, 255 Conn. 330, 346-47, 766 A.2d 400 (2001). "[T]he exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction. . . ." (Internal quotation marks omitted.) Fish Unlimitedv. Northeast Utilities Service Co., 254 Conn. 1, 12, 756 A.2d 262
(2000).
The town argues that the plaintiffs have not exhausted their administrative remedies. Specifically, the settlements do not constitute exhaustion and, therefore, the plaintiffs cannot raise a cause of action based upon the events underlying the settlements. The plaintiffs argue in opposition that the town did not abide by the agreement in failing to hold meetings and respond in writing to the plaintiffs' grievances. Accordingly, the plaintiffs contend that the town repudiated the collective bargaining agreement and waived the arbitration clause therein. CT Page 6192
"It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the defendant and the plaintiffs' union. . . . Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. . . . The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective [bargaining] agreements." (Brackets in original; citation omitted; internal quotation marks omitted.) Hunt v. Prior, 236 Conn. 421, 431-32, 673 A.2d 514
(1996).
The collective bargaining agreement covers any "controversy, complaint, misunderstanding or dispute concerning the interpretation or application of any provision of this agreement." (Motion to Dismiss, Exhibit A, p. 14, ¶ 22.1.) The agreement provides a four step grievance process. The first step requires the aggrieved employee to submit a grievance in writing to the superintendent or appropriate designee. If step one does not result in a settlement, the written grievance shall be submitted to the first selectman or his designee within seven working days from the time an answer was received pursuant to step one. Both steps require that meetings be held, and written answers rendered, within the time limits enumerated in the agreement. The third step allows the union to request mediation of the grievance by the state board of mediation and arbitration (board). The final step allows the union to process the unresolved grievance for arbitration before the board. (Motion to Dismiss, Exhibit A, p. 15.)
The plaintiffs submitted their grievances with the town on November 30, 1999. The union agreed to represent the plaintiffs. (Motion to Dismiss, Exhibit B 1.) On January 21, 2000, the union and the town held a conference which resulted in a tentative verbal agreement. (Defendant's Reply, Exhibits B2, B3.) A memorandum of understanding based upon the tentative agreement was executed on February 14, 2000. (Defendant's Reply, Exhibit B, ¶ 13 and Exhibit B4.) The plaintiffs and the town entered into settlement agreements regarding the grievances by the end of August 23, 2000. (Motion to Dismiss, Exhibit B2.) CT Page 6193
"Our law has long been clear that a [settlement] . . . if free from fraud, mistake or undue influence . . . is conclusive between the parties." (Internal quotation marks omitted.) Doherty v. Sullivan,29 Conn. App. 736, 741, 618 A.2d 56 (1992). The Connecticut Supreme Court has recognized that settlement agreements, voluntarily and fairly made, should be held valid and enforced by the courts. Tallmadge Brothers,Inc. v. Iroquois Gas Transmission System, L.P., 252 Conn. 479, 506,746 A.2d 1277 (2000).
The plaintiffs do not challenge the existence or the specific terms of the settlement agreements. Accordingly, the court finds that the settlements are binding upon the parties. The town argues that the plaintiffs are required by law to do more before seeking redress in court. The settlements, however, are just the type of resolution the grievance process is intended to promote. The town offers no case law, nor is the court aware of any authority, suggesting that a settlement agreement regarding an employee grievance does not constitute a final resolution and an end to the administrative process. The plaintiffs have exhausted all administrative remedies and, therefore, the court has subject matter jurisdiction.[2]
Based on the foregoing reasons, the motion to dismiss is denied.
 ___________________ D. Michael Hurley, Judge Trial Referee